Approved: _____
Jason A. Richman / Kyle A. Wirshba
Assistant United States Attorneys

Before: HONORABLE SARAH L. CAVE
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - - - x

**20 MAG 8068**

UNITED STATES OF AMERICA

- v. -

CARLOS FERNANDO MELO,

Defendant.

- - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violations of
18 U.S.C. §§ 924, 2;
21 U.S.C. §§ 960(a), 963

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

MATTHEW W. RAMMES, being duly sworn, deposes and says that he is a Special Agent with the Drug Enforcement Administration ("DEA") and charges as follows:

COUNT ONE
(Narco-Terrorism Conspiracy)

1. From at least in or about September 2019, up to and including in or about December 2019, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Colombia, Panama, Venezuela, and elsewhere, CARLOS FERNANDO MELO, the defendant, who is expected to be first brought to and arrested in the Southern District of New York, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate Title 21, United States Code, Section 960a.

2. It was a part and an object of the conspiracy that CARLOS FERNANDO MELO, the defendant, and others known and unknown, would and did engage in conduct that would be punishable under Title 21, United States Code, Section 841(a) if committed within the jurisdiction of the United States, to wit, the distribution of, and possession with the intent to distribute, five kilograms and more of mixtures and substances containing a detectable amount

of cocaine, knowing and intending to provide, directly and indirectly, something of pecuniary value to a person and organization that has engaged and engages in terrorism and terrorist activity, to wit, the *Fuerzas Armadas Revolucionarias de Colombia* ("FARC") (which has been designated by the United States Secretary of State as a foreign terrorist organization pursuant to Section 219 of the Immigration and Nationality Act and remains so designated) and its members, operatives, and associates, having knowledge that such organization and persons have engaged and engage in terrorism and terrorist activity, in violation of Title 21, United States Code, Section 960a.

(Title 21, United States Code, Section 960a; and
Title 18, United States Code, Section 3238.)

## COUNT TWO
(Cocaine Importation Conspiracy)

3. From at least in or about September 2019, up to and including in or about December 2019, in an offense begun and committed out of the jurisdiction of any particular State or district of the United States, including in Colombia, Panama, Venezuela, and elsewhere, CARLOS FERNANDO MELO, the defendant, who is expected to be first brought to and arrested in the Southern District of New York, and others known and unknown, intentionally and knowingly combined, conspired, confederated, and agreed together and with each other to violate the narcotics laws of the United States.

4. It was a part and an object of the conspiracy that CARLOS FERNANDO MELO, the defendant, and others known and unknown, would and did import into the United States and into the customs territory of the United States from a place outside thereof a controlled substance, in violation of Title 21, United States Code, Sections 952(a) and 960(a)(1).

5. The controlled substance that CARLOS FERNANDO MELO, the defendant, conspired to import into the United States and into the customs territory of the United States from a place outside thereof, was five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 960(b)(1)(B).

(Title 21, United States Code, Section 963; and
Title 18, United States Code, Section 3238.)

COUNT THREE
(Possession of Machineguns and Destructive Devices)

6. From in or about September 2019, up to and including in or about December 2019, in Colombia, Panama, Venezuela, and elsewhere, and in an offense begun and committed out of the jurisdiction of any particular state or district of the United States and for which one of two or more joint offenders will be first brought to and arrested in the Southern District of New York, CARLOS FERNANDO MELO, the defendant, during and in relation to a drug trafficking crime for which he may be prosecuted in a court of the United States, to wit, the controlled substance offenses charged in Counts One and Two of this Complaint, knowingly used and carried firearms, and, in furtherance of such crime, knowingly possessed firearms, and aided and abetted the use, carrying, and possession of firearms, to wit, machineguns that were capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger, as well as destructive devices.

(Title 18, United States Code, Sections 924(c)(1)(A), 924(c)(1)(B)(ii), 3238, and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

7. I am a Special Agent with the DEA. This affidavit is based upon my conversations with law enforcement officers and employees, as well as a review of documents, during the course of the investigation. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of the investigation. Where the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

8. Based on my training, experience, and involvement in this investigation and others, I have learned the following, in substance and in part:

    a. From at least in or about 1999, up to and including in or about 2020, the FARC became one of the largest producers of cocaine in the world. The FARC has also directed violent acts against United States persons and property in foreign jurisdictions, including, but not limited to, Colombia. For example, FARC leadership has ordered FARC members to kidnap and murder United States citizens and to attack United States interests

in order to dissuade the United States from continuing its efforts to fumigate FARC coca fields and disrupt the FARC's manufacturing and distribution of cocaine and cocaine paste. On or about October 8, 1997, the U.S. Secretary of State designated the FARC as a foreign terrorist organization pursuant to Section 219 of the Immigration and Naturalization Act ("INA"), and the FARC remains so designated.

b. The Ejército de Liberación Nacional ("ELN") is a terrorist organization that has operated in Colombia and elsewhere since in or about 1964. The ELN has committed acts of violence and kidnappings. For example, on or about January 17, 2019, members and associates of the ELN performed a car bombing at the national police academy in Bogota, Colombia, killing 21 people. On or about October 8, 1997, the U.S. Secretary of State designated the ELN as a foreign terrorist organization pursuant to Section 219 of the INA, and the ELN remains so designated.

c. In approximately March 2020, Nicolas Maduro Moros was charged in this district in *United States v. Maduro Moros, et al.*, S2 11 Cr. 205 (AKH) (the "Maduro Indictment"), with participating in a narco-terrorism conspiracy with several other current and former high-ranking members of the Venezuelan Government and the FARC. Maduro Moros is the former president of Venezuela and, as of the date of this Complaint, the *de facto* ruler of the country. As alleged in the Maduro Indictment, Maduro Moros is one of the leaders of the *Cartél de los Soles* or, "Cartel of the Suns," a Venezuelan drug-trafficking organization comprised of high-ranking Venezuelan officials who facilitated the importation of tons of cocaine into the United States, in part through its partnership with the FARC.

d. Luciano Marín Arango, a/k/a "Ivan Marquez" ("Marquez") is a Colombian citizen who joined the FARC in or about 1985. As of the date of this Complaint, Marquez is a member of the FARC's Secretariat, which is the FARC's highest leadership body, and a fugitive on pending charges in the Maduro Indictment and on a cocaine-importation charge contained in *United States v. Pedro Antonio Marin, et al.*, 04 Cr. 446 (TFH), an indictment filed by the United States Attorney's Office for the Southern District of New York charging 54 leaders of the FARC with cocaine-importation charges, including Marquez. In August 2019, Marquez announced in a videotaped statement that the FARC was beginning a "new phase" of its "armed struggle." Marquez characterized this "struggle" as a "continuation of the rebel fight."

e. Seuxis Paucias Hernández Solarte, a/k/a "Jesús Santrich" ("Santrich") is a Colombian citizen who joined the FARC in or about 1991. As of the date of this Complaint, Santrich is a member of the FARC's Central High Command, which is the FARC's second-highest leadership body, and a fugitive on charges contained in the Maduro Indictment and in Indictment 18 Cr. 262 (S.D.N.Y.).

f. In or about July 2019, Maduro Moros announced at a videotaped press conference that the FARC, and in particular Marquez and Santrich, are welcome in Venezuela.

9. Based on my involvement in this investigation, including my conversations with two confidential sources ("CS-1"[1] and "CS-2"[2] respectively, and the "CSes" collectively) and a DEA special agent ("UC-1") who participated in this investigation in an undercover capacity, my review of draft transcripts[3] of meetings and conversations in which the CSes and UC-1 have participated, and my review of recordings made by the CSes and UC-1, I have learned the following, in substance and in part:

OVERVIEW OF THE INVESTIGATION

a. Between in or about September 2019 and in or about December 2019, CARLOS FERNANDO MELO, the defendant, met with the CSes and UC-1 in Colombia and Panama. During the course of

---

[1] CS-1 has been a paid source of information for the DEA for approximately one year. All actions by CS-1 described herein were taken at the direction of law enforcement officials unless otherwise noted. Information provided by CS-1 has proven to be reliable and has sometimes been corroborated by independent evidence, including recordings, surveillance, and other source information.

[2] CS-2 has periodically acted as a paid law enforcement source since 1996, and at all times relevant to this Complaint. All actions by CS-2 described herein were taken at the direction of law enforcement officials unless otherwise noted. Information provided by CS-2 has proven to be reliable and has sometimes been corroborated by independent evidence, including recordings, surveillance, and other source information.

[3] Most conversations summarized herein took place in Spanish. The quotations and summaries contained herein are draft translations or transcriptions prepared by DEA linguists and are subject to further review.

these meetings, MELO attempted to purchase explosives and firearms, including machine guns, for use by the FARC and the ELN. During these meetings, at the direction of the DEA, CS-1 purported to be a weapons broker who introduced MELO to CS-2, and CS-2 purported to be a Lebanese arms trafficker. The CSes eventually introduced MELO to UC-1, and UC-1 purported to be a member of Hizballah with access to explosive material and firearms. During the course of subsequent conversations between MELO and UC-1, MELO reiterated that he was seeking to broker weapons deals for the FARC and ELN, and explained that he wanted to purchase the firearms and explosives because the FARC and ELN wanted to conduct attacks in Colombia. MELO detailed particulars of these planned attacks, which included the possible kidnaping and murder of a DEA agent in Colombia and the bombing of the U.S. Embassy in Bogota, Colombia. Finally, MELO also told the CSes and UC-1 that he could work with his connections in the FARC to obtain cocaine for distribution.

### MELO's Meetings with the CSes and UC-1

b. On or about September 19, 2019, CS-1 met with MELO in the vicinity of Cali, Colombia. CS-1 audio recorded the meeting. During the course of the meeting, the following occurred, in substance and in part:

i. MELO told CS-1 that he was working with the FARC and that the FARC wanted to purchase firearms, including AK-47s and Galils.[4] CS-1 responded that he could obtain the requested weapons for MELO.

ii. MELO detailed for CS-1 the structure of the FARC. MELO explained that different FARC "fronts," such as the 47th front and the 29th front, are in charge of particular geographic areas. MELO also explained his own history with the FARC, including that he used to be associated with a particular FARC leader named "Guacho."[5]

c. On or about October 2, 2019, CS-1 met with MELO in the vicinity of Cartagena, Colombia. CS-1 audio and video recorded the meeting. During the course of the meeting, the

---

[4] Based on my training and experience, I know that Galils are Israeli manufactured automatic rifles.

[5] Based on my training and experience, including my review of publicly available information, I know that a FARC commander named Walter Patricio Arízala Vernaza, a/k/a "Guacho," was a leader of the FARC's 29th front before he was reportedly killed in or about December 2018.

6

following occurred, in substance and in part:

        i.    MELO told CS-1 that the FARC was very upset with recent developments in Colombia and was considering an attack on urban areas in Colombia in response. MELO also told CS-1 that the regime of Nicolás Maduro Moros in Venezuela supported and protected the FARC.

        ii.    MELO explained to CS-1 that the FARC initially wanted to purchase 75 Galils and 75 AK-47s and explained that the FARC was in the process of upgrading their weapons because most of their weapons were old.

    d.    On or about October 3, 2019, the CSes met with MELO in the vicinity of Cartagena, Colombia. One or both of the CSes audio and video recorded the meeting. During the course of the meeting, the following occurred, in substance and in part:

        i.    MELO told the CSes that the FARC could pay for the requested firearms with "merchandise," meaning cocaine. CS-1 responded to MELO that CS-1 could accept cocaine in Puerto Rico, and that CS-1 and his co-conspirators would then transport the cocaine to New York for distribution. Later on, MELO told the CSes that the FARC only wanted to exchange money for firearms, and not cocaine.

        ii.    MELO promised the CSes that he was going to bring a co-conspirator ("CC-1") with him to the next meeting, and explained that CC-1 was interested in supplying them the cocaine. MELO further told the CSes that the CSes could "send your chemist to verify" the quality of the cocaine.

        iii.    MELO and the CSes discussed code words that they could use for particular weapons. For example, they decided to call an AK-47 a "7 meter handle." MELO and the CSes also discussed potential targets for the FARC to attack in Colombia. MELO told the CSes that MELO had recently spoken to a member of the FARC and "what they want to buy now is Galil."

        iv.    CS-1 told MELO that he had "partners" that he was working with, referring in part to UC-1, and that his partners had already been told that MELO worked for the FARC and was looking to purchase weapons for the FARC.

    e.    On or about October 21, 2019, the CSes met with MELO in the vicinity of Bogota, Colombia. One or both of the CSes audio and video recorded the meeting. During the course of

the meeting, the following occurred, in substance and in part:

        i. MELO told the CSes that the FARC weapons purchase was being coordinated by "Santrich," "Ivan Marquez," and others, and that MELO had been coordinating the weapons transaction with Santrich's representatives. MELO further told the CSes that he had spoken with Santrich's representatives "last week" to confirm the details of the transaction and confirmed that Santrich wanted to make the purchase.

        ii. MELO provided the CSes with the following coded list of weapons that the FARC and ELN wanted to purchase, and they discussed the various code words they would use for weapons, explosives, and the purchasers. The list includes, for example, 150 "galindos" for "Gafas," and the CSes and MELO discussed that they would use the word "galindos" to mean Galils and "Gafas" to mean Santrich.[6]



        iii. MELO detailed for the CSes what the FARC planned to do with the weapons. More specifically, MELO explained that the FARC was considering the Colombian Congress and the U.S. Embassy in Bogota as targets. MELO explained that the FARC planned to send three people to Bogota to conduct intelligence on possible attack sites, and that they were less likely to attack the Colombian Congress because former FARC members now held congressional seats and would thus potentially be present during an attack.

---

[6] Based on my training and experience, I know that Santrich often wears sunglasses in public and he is purportedly blind, and that the word Spanish word "gafas" translates to "glasses."

          iv.    MELO also described his own prior involvement with the FARC and explained that the FARC had previously paid him for other unspecified work.

      f.    On or about November 6, 2019, the CSes and UC-1 met with MELO in the vicinity of Panama City, Panama. One or both of the CSes and UC-1 audio and video recorded the meeting. During the course of the meeting, the following occurred, in substance and in part:

          i.    MELO said that he had recently traveled to the jungle to meet with ELN members. MELO said that CC-1 was the individual responsible for a recent bombing at a police training center in Bogota, Colombia, and would be the individual in charge of intelligence in advance of an upcoming attack by the ELN.[7]

          ii.    MELO also detailed the FARC's plans and potential targets to attack. More specifically, as in part reflected in the below note written by MELO, the FARC was focused on potentially killing a DEA agent ("Agente DEA"), or bombing the United States Embassy in Colombia, the Colombian Congress, and other government buildings:



          iii.    MELO said that killing a DEA agent would be a "trophy" for the FARC or ELN, and that he had a connection at the U.S. Embassy who would help them choose and research a

---

[7] Based on my training and experience, including my review of publicly available information, I know that on or about January 17, 2019, a bomb exploded at a training center for the Colombian National Police. The explosion resulted in approximately 21 deaths and the ELN claimed responsibility for the attack.

potential target.  MELO also explained that he had a particular assassin in mind who could carry out the murder.

    iv.  MELO explained that FARC and ELN representatives would join future meetings with the CSes and UC-1 to explain their plans and finalize the weapons purchase.

    v.  MELO also detailed his history of working with the FARC.  More specifically, MELO explained that he had previously brokered weapons transactions for the FARC, including a weapons transaction for the FARC in El Bordo, Colombia.  Further, at one point during the November 6 Meeting, MELO called a FARC member named "Cano" and introduced Cano to UC-1 and the CSes.  Cano explained that he was a member of the FARC and had previously worked with MELO.  Cano then told CS-1 that because MELO had vouched for the CSes and UC-1, the FARC would do business with them.  Finally, Cano ended the call by saying "Let's do it and you will see that we will buy a lot from you by Christmas," and CS-1 responded "perfect."

    vi.  After the call with Cano, MELO told the CSes and UC-1 that Cano reported to someone who himself directly reported to Santrich.  MELO also provided the CSes and UC-1 with the following updated list of weapons that the FARC wanted to purchase, including 300 Galils, and explained that the FARC was particularly interested in Galils because they were easy to use in battle:



    vii.  MELO reiterated that while the FARC wanted firearms, the ELN remained focused on purchasing explosive

material and mercury.[8]  MELO told UC-1 that he was dealing with the leader of an ELN front, and that the front was in charge of finances for the ELN.  MELO also explained that the ELN had access to hidden plane runways in the Colombian jungles that they could use to fly the materials to Colombia.

     viii. Finally, MELO again detailed his history of working with the FARC.  MELO explained to UC-1 that he had "done business" with the FARC before and "never had any problem."  MELO further explained that he worked with the FARC for both "the money and the cause" and that he supplied "medicine and weapons" to the FARC because they had "the tools to get the power."

    g. On or about November 13, 2019, CS-1 met with Ivan LNU in the vicinity of Bogota, Colombia.  CS-1 audio and video recorded the meeting.  During the course of the meeting, the following occurred, in substance and in part:

     i. Ivan LNU told CS-1 that Ivan LNU had known MELO for approximately 10 years, and MELO had asked Ivan LNU to take photographs of the U.S. Embassy and draw a map of the surrounding area.

     ii. Ivan LNU denied that he was a member of the FARC or ELN, but said that MELO often tells Ivan LNU that he goes to Tumaco, Colombia, to speak with FARC and ELN members.

     iii. During the meeting, Ivan LNU placed a call to MELO on speakerphone.  MELO told Ivan LNU that MELO needed to send "800" to the Dominican Republic, and that MELO needed Ivan LNU to take the photographs of the U.S. Embassy.  Ivan LNU responded that he was concerned about security at the Embassy seeing him, and MELO told Ivan LNU to take all the pictures in one day to avoid detection.

   10. Based on my training and experience, I know that Galils and AK-47 rifles are firearms capable of automatically shooting more than one shot, without manual reloading, by a single function of the trigger.

---

[8] Based on my training and experience, I have learned that individuals can use mercury—a heavy metal toxic to humans—to create "dirty" bombs intended not only to cause harm through an explosion but also to spread dangerous substances to further the damage inflicted on a population.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of CARLOS FERNANDO MELO, the defendant, and that he be imprisoned or bailed, as the case may be.

/s Matthew W. Rammes (By Court with Authorization)
MATTHEW W. RAMMES
Special Agent
Drug Enforcement Administration

Sworn to me through the transmission
of this Affidavit by reliable electronic
means, pursuant to Federal Rules of
Criminal Procedure 41(d)(3) and 4.1,
This 31st day of July, 2020

_____
THE HONORABLE SARAH L. CAVE
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK